ELECTRONICALLY FILED
Mar 11 2022
U.S. DISTRICT COURT
Northern District of WV

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING DIVISION

| | |
|---|---|
| JONATHAN M. POLIS, Individually and for Others Similarly Situated,<br><br>v.<br><br>SOUTHWESTERN ENERGY COMPANY | Case No. **5:22-CV-48 (Bailey)**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Jonathan M. Polis (Polis) brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA) against Defendant Southwestern Energy Company (Southwestern).

2. Polis and other workers like him (site safety advisors) regularly worked for Southwestern over 40 hours each week but never received overtime compensation.

3. Instead of paying overtime as required by the FLSA, Polis and the other Southwestern site safety advisors were paid a daily rate with no overtime pay.

4. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

7. Polis worked for Southwestern in Marshall, Brooke, and Ohio Counties, in this District and Division.

## THE PARTIES

8. Polis performed work for Southwestern as a site safety advisor from approximately January 2019 until August 2019. Throughout his tenure, he was paid a day-rate with no overtime compensation. His consent to be a party plaintiff is attached as **Exhibit A**.

9. Polis brings this action on behalf of himself and all other similarly situated workers paid by Southwestern's day-rate system. Each of these site safety advisors were paid a flat amount for each day worked for Southwestern with no overtime for hours they worked in excess of 40 hours in a workweek in accordance with the FLSA. The class of similarly situated workers consists of:

> **All site safety advisors employed by or performing work on behalf of Southwestern classified as independent contractors and paid a day-rate without overtime during the past three years** (the "Day Rate Workers").

10. Southwestern Energy Company is a Delaware corporation that maintains its principal office in Spring, Texas, and a local office in Morgantown, West Virginia. It will be served with process by serving its principal office at 1000 Energy Drive, Spring Texas 77389 by and through the West Virginia Secretary of State. -

## COVERAGE UNDER THE FLSA

11. For at least the past three years, Southwestern has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12. For at least the past three years, Southwestern has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13. For at least the past three years, Southwestern has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person

and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

14. For at least the past three years, Polis and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

15. Southwestern treated Polis and all its site safety advisors that it classified as independent contractors as employees and uniformly dictated the pay practices to which Polis and the Day Rate Workers were subjected.

16. Southwestern's classification of Polis as an independent contractor does not alter its status as an employer under the FLSA.

**FACTS**

17. Southwestern "is among the largest natural gas and natural gas liquids producers in the United States. [It] is a growing independent energy company primarily engaged in the production and development of natural gas, natural gas liquids and crude oil within the nation's most prolific shale gas basins."[1]

18. Southwestern's "primary business is the exploration for and production of natural gas, oil and natural gas liquids[.]"[2] It is "focused on responsibly developing America's abundant supply of natural gas, oil and natural gas liquids to fuel economic growth" including in the Appalachia Basin.[3] Its "Appalachia assets spread across more than 789,000 net acres in Pennsylvania, West Virginia and Ohio."[4]

---

[1] https://www.swn.com/about/ (last visited January 19, 2022).
[2] https://www.swn.com/operations/ (last visited January 19, 2022).
[3] *Id.*
[4] https://www.swn.com/operations/appalachia/ (last visited January 19, 2022).

19. To complete its business objectives, Southwestern contracts with certain companies to provide it with personnel to perform the necessary work.

20. Southwestern hires site safety advisors to perform work which is an integral and indispensable part of its business objectives.

21. Over the past three years, Southwestern employed dozens of oilfield workers – including Polis – as site safety advisors.

22. These workers are subjected to the same or similar illegal pay practices for the same work. Specifically, the Day Rate Workers were paid a day-rate while performing site safety work on behalf of Southwestern, regardless of the number of hours that they worked that day (or in that workweek) without overtime pay.

23. For example, Polis worked for Southwestern starting in approximately January 2019 until August 2019 in Marshall, Brooke, and Ohio Counties in West Virginia.

24. Throughout his tenure, he was paid on a day-rate basis.

25. As a site safety advisor, Polis was required to ensure compliance with Southwestern's procedures, instructions, and safety standards. To accomplish this, he would conduct safety meetings, inspections, investigations, safety audits, and advise contractors.

26. Polis regularly worked more than 40 hours each week while employed by Southwestern.

27. Polis typically worked more than 80 hours a week.

28. The work Polis performed was an essential part of Southwestern's core business.

29. During Polis's employment with Southwestern, he was classified as an independent contractor, however, Southwestern exercised control over all aspects of his job.

30. Southwestern did not require any substantial investment by Polis for him to perform the work required of him.

31. Southwestern determined Polis' opportunity for profit and loss.

32. Indeed, Southwestern controlled all the significant or meaningful aspects of the job duties performed by Polis.

33. Southwestern dictated the hours and locations Polis worked, tools used, and rates of pay received.

34. Southwestern controlled all aspects of Polis' job activities by enforcing mandatory compliance with Southwestern's policies and procedures.

35. No real investment was required of Polis to perform his job.

36. Polis worked on Southwestern's job location, Southwestern and its superintendents controlled the job site and the operations taking place.

37. Polis did not provide the equipment he worked with on a daily basis.

38. Southwestern made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Polis worked.

39. Polis did not incur operating expenses like rent, payroll, and marketing.

40. Polis was economically dependent on Southwestern during his employment.

41. Southwestern set Polis' rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Southwestern.

42. Southwestern directly determined Polis' opportunity for profit and loss. Polis' earning opportunity was based on the number of days Southwestern scheduled him to work.

43. The daily and weekly activities of Polis and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Southwestern.

44. Virtually every job function was pre-determined by Southwestern, including the forms to use at a job site, the reports to compile, the schedule of work, and safety guidelines to follow.

45. Polis and the Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters.

46. Polis and the Day Rate Workers did not have any supervisory or management duties.

47. For the purposes of an FLSA overtime claim, Polis and the Day Rate Workers performed substantially job duties related to servicing oil and gas operations on Southwestern's sites.

48. Polis and the Day Rate Workers were not employed by Southwestern on a project-by-project basis.

49. In fact, while Polis was classified as an independent contractor, he was regularly on call for Southwestern and was expected to drop everything and work whenever needed.

50. The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for 2 or more weeks at a time.

51. Instead of paying them overtime, Southwestern paid Polis and the Day Rate Workers a day-rate. Southwestern denied the Day Rate Workers overtime for any hours worked more than 40 hours in a single workweek.

52. Southwestern's policy of failing to pay its site safety advisors misclassified as independent contractors, including Polis, overtime violates the FLSA because these workers are, for all purposes, employees.

53. Polis and the Day Rate Workers were not guaranteed a salary under the FLSA. *See Hewitt v. Helix Energy Sols. Grp., Inc.,* 15 F.4th 289 (5th Cir. 2021).

54. Since Polis and the Day Rate Workers were not guaranteed a salary, they were non-exempt employees who are owed unpaid overtime.

55. Because Polis (and Southwestern's other site safety advisors) was misclassified as an independent contractor by Southwestern, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

56. Despite knowing the FLSA's requirements, Southwestern failed to pay Polis and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

### FLSA VIOLATIONS

57. Polis incorporates the preceding paragraphs by reference.

58. As set forth herein, Southwestern violated the FLSA by failing to pay Polis and the Day Rate Workers overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

59. Southwestern knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation. Southwestern's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

60. Accordingly, Polis and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### SOUTHWESTERN RECKLESSLY DISREGARDED ITS FLSA OBLIGATIONS

61. Polis incorporates the preceding paragraphs and alleges that Southwestern recklessly disregarded its FLSA obligations.

62. Southwestern was aware of the requirements of the Fair Labor Standards Act.

63. Southwestern knew that employees should be paid hourly and overtime unless an exemption applies.

64. Southwestern knew a day rate alone does not satisfy the salary basis requirements of the FLSA.

65. Southwestern has previously been sued for alleged violations of the Fair Labor Standards Act. *See Clark v. Southwestern Energy Company,* No. 4:20-cv-00475-KGB (E.D. Ark. May 5, 2020).

66. Southwestern was aware of Polis' job duties.

67. Southwestern was aware of Polis' primary duty.

68. Southwestern knew that Polis was required to follow Southwestern's safety policies.

69. Southwestern knew that Polis could not vary from its safety policies and procedures.

70. Southwestern knew that Polis could not hire or fire employees of Southwestern.

71. Southwestern knew that Polis did not have the authority to make decisions creating policy or altering procedures, without management approval.

72. Southwestern knew that Polis did not manage a division or subdivision of its work.

73. Southwestern knew that Polis was a field worker.

74. Southwestern knew that Polis reported to supervisors and was in frequent communication with Southwestern employees.

75. Southwestern designed Polis' job to have little discretion.

76. Polis could not exercise discretion or independent judgement, pursuant to Southwestern's safety program, and still comply with the program or OSHA requirements.

77. Southwestern prevented Polis from acting independently, separate and apart from applicable policies.

78. Southwestern was aware of Polis' hours worked.

79. Southwestern was aware Polis worked more than forty hours in a workweek.

80. Southwestern was aware that Polis did not receive time and a half for hours worked over 40 in a week.

81. Southwestern employed individuals in the same or similar job position as Polis. Those individuals were treated as employees while Polis and the Putative Class were treated independent contractors.

82. Southwestern knew all these things, so it attempted to shift FLSA compliance responsibility to staffing companies, like Rig Up.

83. Southwestern knew Polis would not qualify for an FLSA exemption and would need to be paid overtime, if an employee, so Southwestern classified Polis as an independent contractor.

84. Despite prior FLSA litigation and knowledge of the duties and hours worked, Southwestern did not change its classification of its site safety advisors as exempt from overtime pay and continued its policy of misclassifying its site safety advisors as exempt from overtime pay.

## COLLECTIVE ACTION ALLEGATIONS

85. Polis incorporates all previous paragraphs and alleges that the illegal pay practices Southwestern imposed on him were likewise imposed on the Day Rate Workers.

86. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

87. Numerous other individuals who worked with Polis were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

88. Based on his experiences and tenure with Southwestern, Polis is aware that Southwestern's illegal practices were imposed on the Day Rate Workers.

89. Southwestern used the Day Rate Workers across the United States.

90. The Day Rate Workers were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

91. Southwestern is the true employer of Polis and the Day Rate Workers.

92. Southwestern's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

93. Polis' experiences are therefore typical of the experiences of the Day Rate Workers.

94. Polis has no interests contrary to, or in conflict with, the Day Rate Workers. Like each Day Rate Worker, Polis has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

95. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96. Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and Southwestern will reap the unjust benefits of violating the FLSA.

97. Furthermore, even if some of the members of the class could afford individual litigation against Southwestern, it would be unduly burdensome to the judicial system.

98. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual Day Rate Workers and provide for judicial consistency.

99. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   (a) Whether Southwestern employed Polis and the Day Rate Workers within the meaning of the FLSA;

   (b) Whether Polis and the Day Rate Workers were improperly misclassified as independent contractors;

    (c)    Whether Southwestern's decision to classify Polis and the Day Rate Workers as independent contractors was made in good faith;

    (d)    Whether Southwestern's decision to not pay time and a half for overtime to Polis and the Day Rate Workers was made in good faith;

    (e)    Whether Southwestern's violations of the FLSA were willful; and

    (f)    Whether Southwestern's illegal pay practices were applied uniformly across the nation to all Day Rate Workers.

100.    Polis claims are typical of the claims of the Day Rate Workers. Polis and the Day Rate Workers sustained damages arising out of Southwestern's illegal and uniform employment policy.

101.    Polis knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

102.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

103.    Polis demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Polis prays for judgment against Southwestern as follows:

    (a)    For an order allowing this action to proceed as a FLSA collective action and directing notice to the Day Rate Workers;

    (b)    For an order pursuant to section 16(b) of the FLSA finding Southwestern liable for unpaid back wages, and an equal amount of liquidated damages, due to Polis and the Day Rate Workers;

    (c)    For an order awarding Polis and the Day Rate Workers the costs of this action;

    (d)    For an order awarding Polis and the Day Rate Workers their attorneys' fees;

    (e)    For an order awarding Polis and the Day Rate Workers unpaid benefits and compensation in connection with the FLSA violations;

    (f)    For an order awarding Polis and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

(g) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Anthony J. Majestro*
**Anthony J. Majestro (WVSB 5165)**
**James S. Nelson (WVSB 10776)**
**POWELL & MAJESTRO PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 – Telephone
304-346-2895 – Facsimile

**AND**

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Richard M. Schreiber
Texas Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77005
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**